STATE OF MAINE

WALDO, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-98-005

DHM - WAL - 6/8/2000

SADIE KENDALL, *et al.*,

Plaintiffs

v.

CHARLES L. BOYNTON,

Defendant

STATE OF MAINE
Waldo County Superior Court
DECISION AND ORDER

JUN - 8 2000

REC'D AND FILED
Joyce M. Page, Clerk

This matter is before the court after bench trial with both parties present and represented by counsel. Plaintiffs' complaint seeks money damages for breach of fiduciary duties and fraud. There is very little dispute of fact.

Plaintiffs, Sadie Kendall, Virginia Lautieri, Benjamin Kendall, and June Hobbs are children of Mary Kendall. Mary Kendall was a foster child to Oscar Boynton and Jennie Boynton. In 1948, when Sadie Kendall was three years old, she remembers visiting with Oscar and Jennie Boynton. Sadie Kendall's father died in 1949 at which time Sadie, her brothers, sister and mother were living in Appleton in a garage as they had no other place to live. Their sole source of income was State Aid to Dependent Children. Consequently, the family went to live with Jennie Boynton and, although subject to some dispute, they stayed until after Jennie died. On or about the Thanksgiving holiday after Jennie's death, some men came to the Boynton home and told the Kendalls to leave.

At the time of her death, Jennie was old, feeble and essentially stayed in bed as she was 80 or 82 years of age. The plaintiff, Sadie Kendall, was five years old. Jennie

Boynton needed help to move around. On occasion, the children walked to the store for food.

In 1995, Sadie Kendall was diagnosed with breast cancer. As a result, she developed a serious interest to research her mother's family history. As a result of consultation with a genealogist and conversations with the Probate Court staff, she hired a title abstractor to research disposition of the property of Oscar Boynton, who died in 1948. As a result of her findings, this action was commenced.

The defendant, Charles L. Boynton, is the son of John L. Boynton, who was nephew to Oscar I. Boynton as son of Charles A. Boynton, Oscar Boynton's deceased brother. Charles, a man of 87 years of age, had been a farmer since 1915. Commencing in 1941 and through the 40's, 50's, and 60's, he operated a dance pavilion and sold some parcels of land around Sanborn Pond. The defendant testified that Oscar and Jennie were his aunt and uncle and that he lived six to seven miles away from their farm. Mr. Boynton testified that on occasion he would assist Oscar and Jennie by shingling their roof, assisting with the haying, and other maintenance and farming activities. Since Oscar and Jennie had no transportation, he would occasionally drive them back and forth to town. He distinctly remembers the death of Oscar in 1948 and the death of Jennie in 1951. After Oscar died, the defendant testified he provided transportation for Jennie. He did not have a close personal relationship, he did not know her family, and he conducted no business for or with her. Charles Boynton testified that he did not see her often in the months just before she died as she did not go to town nor request assistance. He did

2

admit that occasionally he and his wife would visit with her but he did nothing further for her as there were no chores to do, they only had a minimum number of cattle. He did remember that Oscar had a hard time paying his taxes.

Charles Boynton testified that he was not aware of anyone living with Jennie during the last year of her life and he did visit with her every month or so. However, he was aware that Oscar and Jennie had two "State" children with them at different times. When Oscar died, Charles testified he was closest blood relative as Oscar and Jennie had no children of their own. Soon after Oscar's death, Jennie called Charles and advised him that she was having him appointed administrator. When he went to visit with her, she already had a deed prepared and signed conveying land to him. He testified he advised Jennie he did not want the land, he could not pay the taxes on it but she insisted that he take it as it was "family land." Charles testified he had no idea what the responsibilities of an administrator were as Jennie and lawyer Morse did all of the work and he simply signed papers. He does not recall ever going to the Probate Court. The defendant testified the land had very little value, there was no sentimental attachment, it was mostly bushes and rough fields, it was difficult for him to pay the taxes and he sold the land for $2,000 after acquiring the other interest from Nellie Jackson, Oscar's niece.

From the testimony and the exhibits, the history of relevant events starts with the death of Oscar Boynton on September 26, 1948. On October 1, 1948, Jennie Boynton applied for the administration of the intestate affairs of Oscar I. Boynton alleging as heirs-at-law, herself as widow, John L. Boynton as nephew, and Nellie

3

Jackson as niece. She asked that Charles L. Boynton, the defendant, be appointed administrator. Assent to the petition for administration was signed by Jennie M. Boynton, John L. Boynton, and Mrs. Nellie M. Jackson. On October 5, 1948, Jennie M. Boynton conveyed to defendant by quit claim deed all her right, title and interest in and to the Charles Banks farm, so-called, situated in Searsmont. The deed recites that the farm was owned by her late husband Oscar I. Boynton. She also conveyed all of her interest in the former homestead farm of her husband Oscar I. Boynton, formerly owned by his father, Albion Boynton, and "in fact all my right, title and interest in and to any and all other real estate." Charles L. Boynton was appointed administrator of the estate on October 7, 1948. On September 6, 1950, Nellie Jackson conveyed her right, title and interest to the Charles Banks farm to Charles L. Boynton. On September 15, 1950, the Will of John L. Boynton was approved by the Probate Court which Will gave to Charles L. Boynton all residue and remainder of his estate. On December 9, 1960, Charles L. Boynton conveyed the Charles Banks farm to Walter and Mary C. Calderwood reciting as source of deeds of Nellie Jackson and Jennie M. Boynton. This deed was recorded December 14, 1960, as Book 583, Page 383. At the same time, the deed of Jennie M. Boynton to Charles L. Boynton, having never previously been recorded, was filed with the Registry and recorded at Book 583, Page 414. On the same date, the deed of Nellie Jackson to Charles L. Boynton was recorded at Book 583, Page 416.

Jennie Boynton died on January 23, 1951, testate. In her Will, signed September 27, 1950, she left the remainder of her estate to Mary I. Kendall "who has

4

lived in my family for many years." The only real estate appearing in the probate estate of Jennie M. Boynton is the "homestead farm situated in Morrill, Maine," with a valuation of $1,000.

The essence of plaintiffs' complaint is that as heirs-at-law of Mary Kendall, remainderman under the Will of Jennie Boynton, they are entitled to the value of the real estate conveyed by Jennie M. Boynton to the defendant Charles L. Boynton on the grounds that Charles breached his fiduciary duty as administrator of the estate of Oscar Boynton by accepting from Jennie Boynton a deed of the Banks farm two days before his appointment as administrator of the Oscar Boynton estate. Secondly, they allege that Charles Boynton has engaged in fraudulent concealment of that conveyance by failing to record the deed of 1948 until 1960, failing to provide any basis for discovery of the deed on the part of the plaintiffs and thereby causing the plaintiffs to be unaware of the transaction until title examination in 1995. Further, to the defendant's assertion of the limitation of action having expired, at the very least, six years from the recording in 1960, the plaintiffs allege they are entitled to the benefit of the discovery rule.

The fundamental factual dispute in this matter concerns the relationship between the defendant Charles L. Boynton and the decedent Jennie Boynton. Plaintiffs do not assert any affirmative evidence of undue influence on the part of the defendant in acquiring the Charles Banks farm but argues that there was a personal and confidential relationship in fact at the time of the transfer and a fiduciary relationship in fact and law created by his appointment as administrator

5

some two days hence. Furthermore, the plaintiffs believe they should not be bound by the six-year statute of limitations commencing at the time of the recording of the deed in 1960 because of fraudulent concealment or fraud in fact committed by the defendant preventing the discovery of the transaction until 1995.

When did the statute of limitations commence to run under these circumstances? This is a claim for money damages rather than recovery of real estate. "All civil actions shall be commenced within six years after the cause of action accrues . . ." 14 M.R.S.A. § 752. The cause of action, if any, accrued on October 5, 1948. However, "if a person, . . . liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within six years after the person entitled thereto discovers that he has just cause of action. . ." 14 M.R.S.A. § 859. In a matter involving fraudulent concealment of the existence of a cause of action or a claim which is founded upon fraud, the statute of limitations starts to run when the existence of the cause of action or fraud is discovered or should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence. *Westman v. Armitage*, 215 A.2d 919 (Me. 1966). Mere constructive notice of a deed by reason of its being filed for record is not notice of facts constituting fraud, but where all circumstances are such that plaintiff should have discovered conveyance and its fraudulent character more than six years before bringing of the action, it will be barred. *Ibid.* Fraud is a knowing misrepresentation of the truth or concealment of a material fact to induce

6

another to act to his or her detriment. It may be a misrepresentation made recklessly without belief in its truth to induce another person to act or it may be an unconscionable dealing such as the unconscientious use of the power arising out of the parties' relative positions and resulting in an unconscionable bargain. Concealment is the act of refraining from disclosure, usually an act by which one prevents or hinders the discovery of something. It is the act of removing from sight or notice as in hiding. Fraudulent concealment is the affirmative suppression or hiding, with the intent to deceive or defraud, of a material fact or circumstance that one is legally bound to reveal. BLACK'S LAW DICTIONARY, 7th Ed. (1999).

Plaintiffs present no substantive evidence as to the circumstances under which Jennie Boynton conveyed the property to the defendant. Instead, they rely upon circumstantial evidence to establish that the defendant was a neighbor and relative of Jennie, two days before he was appointed administrator upon the petition of Jennie she conveyed the Charles Banks farm to him without consideration, the deed was not recorded in the Registry of Deeds for 12 years, the defendant purchased the interest of Nellie Jackson in the property and acquired her deed, and the defendant has had some experience in buying and selling real estate notwithstanding his occupation as a dairy farmer. The defendant, called as a witness by the plaintiffs, explains that he was a relative, neighbor and friend to Jennie and Oscar Boynton, that he assisted them in doing manual labor on their farm and provided transportation for them, that upon Oscar's death, Jennie gave him a bull to board which she soon thereafter sold, that he continued to assist Jennie with

7

transportation but throughout their relationship he never engaged in any business matters with them, performed any business functions for them, or in any way became involved in their business activities. He did not solicit nor negotiate for the acquisition of any real estate and, indeed, was not in a financial position to comfortably acquire the Banks farm with its liability for taxes. He avowed that the farm was worth little but did admit that he paid Nellie Jackson consideration for her interest and that he received $2,000 for the farm some years later. While his name appears on the final account of the Boynton estate as entitled to compensation for his activities as administrator, there is no evidence that the amount was ever paid nor an invoice issued for that purpose. Boynton testified that he would not have accepted any money from Jennie for his time or his expenses because of her serious financial position. In its totality, there is no evidence presented by the plaintiffs that the defendant, as a matter of fact, enjoyed a relationship of trust and confidence with Oscar or Jennie Boynton or that he was in such a disparate position of power or influence over Jennie such as to give rise to a violation of that confidential relationship or commit undue influence in accepting the deed.

Plaintiffs argue that even if such evidence is not present, the defendant's position as a fiduciary allows a presumption of undue influence under these circumstances. Such presumption is rebutted by the evidence submitted that the property was conveyed at the urging of Jennie Boynton in order to preserve it as "family land." Further, if there was a presumed breach of a duty, two and half years later, what was the responsibility of the executor of the Jennie Boynton estate with

8

respect to the real estate she had conveyed? As executor of a Will in which Mary Kendall was sole devise, is there evidence of fraudulent concealment of the transfer of the Charles Banks farm to the defendant as to him? There was no evidence of any concealment by the defendant as to the estate of Jennie Boynton unless this court can find that the simple failure to record a deed constitutes concealment and the relationship is such as to cause the court to presume that it is fraudulent. This court declines to so find.

The plaintiffs' mother was a foster child to Jennie Boynton. As such, she bore no legal relationship nor was entitled to any legal duty on the part of Jennie to convey property to her. At the time of the conveyance which plaintiffs now allege was a breach of a duty, the fiduciary duty of the defendant was to the intestate estate and heirs of Oscar. Therefore, his duty ran to Jennie, Nellie Jackson, and John Boynton. John Boynton died on June 15, 1950, testate leaving the residue of the estate to his son, Charles L. Boynton. Since the conveyance was not concealed as a matter of fact as to those heirs-at-law, the cause of action must have accrued at a time when he probably was aware that he was going to be appointed administrator to the Oscar Boynton estate. There is no reason to believe that the death of Jennie Boynton within six years of the accrual of the cause of action would create a fraudulent concealment, a new breach of fiduciary duty, and therefore toll the running of the statute of limitations.

In substance, to the extent the plaintiffs' complaint is founded upon fraud, the court finds they have not met their burden of submitting sufficient evidence to

9

make it more likely than not that the defendant engaged in fraud in the acquisition of the real estate. To the extent the plaintiffs allege a breach of fiduciary duty, the court is satisfied that the statute of limitations has run and the court has no jurisdiction to consider it.

For all the reasons stated above, the entry will be:

Judgment for the defendant; defendant to recover costs.

Dated: June___2___, 2000

Donald H. Marden
Justice, Superior Court